**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **DYLAN ANTHONY POLK**, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**GROUND PENETRATING RADAR SYSTEMS LLC**<br><br>Defendant. | Case No. _________________<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

Plaintiff—Dylan Anthony Polk—brings this action individually and on behalf of all current and former hourly, employees, who were paid bonuses, commissions, and/or received prevailing wages, (collectively, "Plaintiff and the Putative Collective Members"), who worked for Defendant—Ground Penetrating Radar Systems LLC ("GPRS")—anywhere in the United States, at any time during the relevant statute of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19.

**I.**
**OVERVIEW**

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA.

2. Plaintiff and the Putative Collective Members are those similarly situated persons who worked for GPRS at any time during the relevant time period through the final disposition of this matter, who have not been paid the correct amount of overtime wages, in violation of federal law.

3. Although Plaintiff and the Putative Collective Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. During the relevant time period, GPRS knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members the proper amount of overtime on a routine and regular basis.

5. Specifically, GPRS's regular practice—including during weeks when Plaintiff and the Putative Collective Members worked in excess of forty (40) hours—was (and is) to pay Plaintiff and the Putative Collective Members non-discretionary bonuses (including, but not limited to, performance- and commission-based bonuses) and to pay them at higher prevailing-wage rates for certain hours worked, but to fail to include the non-discretionary bonuses and/or the prevailing-wage premium pay in Plaintiff and the Putative Collective Members' regular rates of pay for purposes of calculating their correct rate of overtime compensation.

6. The effect of GPRS's practices were (and are) that Plaintiff and the Putative Collective Member's overtime compensation was not paid at the correct rate; thus, GPRS has failed to properly compensate Plaintiff and the Putative Collective Members the proper amount of overtime under the FLSA.

7. GPRS knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members the proper amount of overtime on a routine and regular basis during the relevant time period.

8. Plaintiff and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

9. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

10. Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

11. Plaintiff—Dylan Anthony Polk ("Polk")—was employed by GPRS in Michigan during the relevant time period. Plaintiff Polk did not receive the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12. The FLSA Collective Members are those current and former hourly employees, who were paid bonuses, commissions, and/or received prevailing wages, who were employed by GPRS, anywhere in the United States, at any time from May 4, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Polk worked and was paid.

13. Defendant Ground Penetrating Radar Systems LLC ("GPRS") is a foreign limited liability company that is licensed to do business in the State of Ohio with its principal office in Maumee, Ohio. GPRS may be served through its registered agent for service of process: **Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.**

## III.
## JURISDICTION & VENUE

14. This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

[1] The written consent of Dylan Anthony Polk is attached hereto as Exhibit "A."

15. Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

16. This Court has general personal jurisdiction over GPRS because Ohio qualifies as its home state as its principal office is located in Maumee, Ohio, which is located within this District and Division.

17. Venue is proper pursuant to 28 U.S.C. § 1391 in the Northern District of Ohio because GPRS's principal place of business and corporate headquarters are located in Maumee, Ohio, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

18. On information and belief, Defendant GPRS is a subsurface utility-locating, concrete-scanning, and infrastructure-mapping company that uses ground-penetrating radar and related electromagnetic equipment to locate underground utilities, voids, rebar, and other subsurface features for clients in the construction, engineering, and utility industries throughout the United States.[2]

### Plaintiff and the Putative Collective Members are Similarly Situated

19. To provide its services, GPRS employed (and continues to employ) numerous non-exempt hourly employees—including Plaintiff and the individuals that make up the putative collective.

20. Plaintiff and the Putative Collective Members were employed by GPRS as hourly, employees who were not paid the correct amount of overtime compensation for hours worked in excess of forty (40) hours each workweek.

---

[2] https://www.gp-radar.com/contact/gprs-quote?utm_source=google&utm_medium=cpc&utm_campaign=30328759&utm_content=971633629&utm_term=ground%20penetrating%20radar&utm_device=c&gad_source=1&gad_campaignid=30328759&gbraid=0AAAAAD_dR0ejm3oNt4HtcUZv80JJPFOB6&gclid=CjwKCAjw5NvPBhAoEiwA_2egfleYsn0JTVuZpraXzKYnYb04KsW1YPwQ0rQWBK08nCnoLOUOi3A-CBoCUpcQAvD_BwE (last visited on May 3, 2026).

21. Plaintiff and the Putative Collective Members' job duties include, among other things, operating ground-penetrating radar and related equipment to locate and identify underground utilities and other subsurface features, marking utility locations, completing field reports, and otherwise performing the field work necessary to deliver GPRS's services to its clients.

22. While exact job titles may differ, these hourly, non-exempt employees were subjected to the same or similar illegal pay practices for similar work.

23. Importantly, none of the FLSA exemptions relieving a covered employer (such as GPRS) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective Members.

24. Plaintiff Polk was employed by GPRS as a "Project Manager" performing field utility-locating work from approximately September 2023 until July 2025. Throughout his employment, Plaintiff Polk performed work for GPRS in Michigan, including in and around Detroit, Michigan.

25. During their respective employment with GPRS, Plaintiff and the Putative Collective Members typically worked five (5) to six (6) days per week and approximately eight (8) to ten (10) hours per day.

26. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, their pay structure, and the application of GPRS' policies (and practices) that result in the complained-of FLSA violations.

27. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties—that is, they all perform field work for GPRS using ground-penetrating radar and related equipment to locate and identify underground utilities and other subsurface features for GPRS's clients.

28. Plaintiff and the Putative Collective Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and were paid non-discretionary bonuses

and, on certain projects, prevailing-wage premium pay, none of which GPRS included in their regular rates of pay for purposes of calculating their overtime compensation.

29. Plaintiff and the Putative Collective Members are similarly situated with respect to GPRS's policies (and practices) pertaining to the calculation of their regular rates of pay, resulting in the complained-of FLSA violations.

**Failure to Include Non-Discretionary Bonuses in the Regular Rate**

30. GPRS paid out non-discretionary bonuses to Plaintiff and the Putative Collective Members—including performance- and commission-based bonuses—based on a pre-determined formula, but failed to include these bonuses in Plaintiff and the Putative Collective Members' regular rates of pay.

31. The non-discretionary bonuses paid to Plaintiff and the Putative Collective Members were meant to encourage and motivate them to work harder and to reward them for their hard work.

32. The non-discretionary bonuses were based upon a pre-determined formula established by GPRS related to Plaintiff and the Putative Collective Members' productivity and number of jobs completed.

33. Moreover, specific criteria had to be met in order for Plaintiff and the Putative Collective Members to receive these non-discretionary bonuses.

34. When Plaintiff and the Putative Collective Members met the criteria, they were entitled to receive these non-discretionary bonuses.

35. Although Plaintiff Polk worked overtime hours in numerous workweeks during the periods in which he received these non-discretionary bonuses, GPRS failed to recalculate Plaintiff Polk's regular rate of pay to account for the non-discretionary bonuses in the calculation of his overtime compensation.

36. GPRS's regular-rate error caused Plaintiff Polk's overtime compensation to be underpaid during the periods in which he received non-discretionary bonuses.

37. Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiff and the Putative Collective Members' regular rates of pay before any and all overtime multipliers were applied.

38. GPRS's failure to include the non-discretionary bonuses in Plaintiff and the Putative Collective Members' regular rates of pay caused GPRS to compensate Plaintiff and the Putative Collective Members at an overtime rate lower than the rate required by the FLSA, and therefore violated (and continues to violate) the FLSA.

**Failure to Blend Prevailing-Wage Premium Pay into the Regular Rate**

39. In addition to paying Plaintiff and the Putative Collective Members at a base hourly rate, GPRS paid Plaintiff and the Putative Collective Members at a higher prevailing-wage rate for hours worked on certain projects subject to prevailing-wage requirements.

40. When Plaintiff and the Putative Collective Members worked at two or more different hourly rates within the same workweek, the FLSA required GPRS to compute their regular rate of pay for that workweek as the weighted average of the rates at which they worked—that is, by dividing total straight-time compensation for the workweek by the total number of hours worked. *See* 29 C.F.R. § 778.115.

41. Although Plaintiff Polk worked overtime hours in numerous workweeks during the periods in which he received both a base hourly rate and a higher prevailing-wage rate for hours worked on certain projects, GPRS failed to recalculate Plaintiff Polk's regular rate of pay to account for the higher prevailing-wage rate in the calculation of his overtime compensation.

42. GPRS, did not blend Plaintiff and the Putative Collective Members' base hourly rate and prevailing-wage rate when calculating their regular rate of pay for purposes of computing overtime

compensation. Instead, GPRS calculated Plaintiff and the Putative Collective Members' overtime rate using only the lower base hourly rate.

43. As a result, in the workweek in which Plaintiff and the Putative Collective Members worked both base-rate and prevailing-wage hours and worked in excess of forty (40) hours, GPRS paid them an overtime rate lower than the rate required by the FLSA, in violation of the FLSA.

44. As a result of GPRS's company-wide policies and practices of failing to include non-discretionary bonuses, commissions, and prevailing-wage premium pay in Plaintiff and the Putative Collective Members' regular rates of pay, Plaintiff and the Putative Collective Members were not compensated for all hours worked in excess of forty (40) in a workweek at the rates required by the FLSA.

45. GPRS knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective Members the proper amount of overtime compensation in violation of the FLSA.

46. GPRS's actions therefore constitute willful violations under the law and were not made in good faith.

47. GPRS knew or should have known that its failure to pay the correct amount of overtime to Plaintiff and the Putative Collective Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective Members.

48. Because GPRS did not pay Plaintiff and the Putative Collective Members time and a half their proper regular rates for all hours worked in excess of forty (40) in a workweek, GPRS's pay policies and practices willfully violated (and continue to violate) the FLSA.

49. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## V.
## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

50. The preceding paragraphs are incorporated as though fully set forth herein.

51. The "FLSA Collective" and "FLSA Collective Members" are defined as follows:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WHO WERE PAID BONUSES, COMMISSIONS, AND/OR RECEIVED PREVAILING WAGES, WHO WERE EMPLOYED BY GROUND PENETRATING RADAR SYSTEMS LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 4, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

52. At all material times, GPRS has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

53. At all material times, GPRS has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

54. At all material times, GPRS has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of subsurface utility-locating, concrete-scanning, and infrastructure-mapping services and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

55. Specifically, GPRS employs numerous hourly employees to provide subsurface utility-locating and related services across the United States, purchases materials through commerce,

transports materials, equipment, and personnel through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

56. During the respective periods of Plaintiff and the FLSA Collective Members' employment by GPRS, these individuals provided services for GPRS that involved interstate commerce for purposes of the FLSA.

57. In performing work for GPRS, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

58. Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who provided subsurface utility-locating and related services to GPRS's customers throughout the United States. 29 U.S.C. § 203(j).

59. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

60. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in paragraph 51.

61. The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of GPRS.

**B. FAILURE TO PAY OVERTIME UNDER THE FLSA**

62. GPRS violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of subsurface utility-locating and related services, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked

in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

63. Moreover, GPRS knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

64. GPRS knew or should have known its pay practices were (and continue to be) in violation of the FLSA.

65. GPRS is a sophisticated party and employer and therefore knew (or should have known) its pay policies were (and continue to be) in violation of the FLSA.

66. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted GPRS to pay them according to the law.

67. The decision and practice by GPRS to not pay Plaintiff and the FLSA Collective Members overtime at the rate required by the FLSA for all hours worked over forty (40) each week was willful and was neither reasonable nor in good faith.

68. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of GPRS's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

71. Other similarly situated employees of GPRS have been victimized by GPRS's patterns, practices, and policies, which are in willful violation of the FLSA.

72. The FLSA Collective is defined in paragraph 51.

73. GPRS's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of GPRS, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

74. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

75. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

76. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

77. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

78. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and GPRS will retain the proceeds of its violations.

79. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

80. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as in paragraph 51.

## VI.
## RELIEF SOUGHT

81. Plaintiff Polk respectfully prays for judgment against GPRS as follows:

a. For an Order certifying the FLSA Collective as defined in paragraph 51;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding GPRS liable for unpaid overtime wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d. For an Order awarding the costs of this action;

e. For an Order awarding attorneys' fees;

f. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

g. For an Order awarding Plaintiff Polk a service award as permitted by law;

h. For an Order compelling the accounting of the books and records of GPRS, at GPRS's expense (should discovery prove inadequate); and

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: May 7, 2026

Respectfully submitted,

**BARKAN MEIZLISH DEROSE COX, LLP**

By: */s/ Robert E. DeRose*
**Robert E. DeRose** (OH Bar No. 0055214)
bderose@barkanmeizlish.com
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24071993
lauren@a2xlaw.com
**Carter T. Hastings** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24101879
carter@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys for Plaintiff and the Putative Collective Members***